FREDERICKA HOMBERG WICKER, Judge.
[¡¡Cody Vedol, defendant, was convicted on October 19, 2011 of second degree murder, a violation of La. R.S. 14:30.1, and of being a felon in possession a firearm, a violation of La. R.S. 14:95.1. On appeal, defendant argues that the evidence presented at trial was insufficient to convict him of second degree murder and that his sentence for that crime is unconstitutionally excessive in violation of the U.S. Constitution’s Eighth Amendment. Defendant also argues that his rights under the Fifth and Sixth Amendments to the U.S. Constitution were violated when the trial court failed to allow defendant a recess to call a material witness and when the trial court allowed the State to present an expert witness in rebuttal to defendant’s own testimony without allowing defendant the opportunity to present his own witness in surrebuttal. For the reasons below, this Court finds these assignments of error meritless and affirms defendant’s convictions and sentences.

J¿'ACTS AND PROCEDURAL HISTORY

On August 18, 2009, defendant was standing with five other males in a parking lot between 1116 Tallow Tree Lane and 1117 Orange Blossom Lane in Harvey. That night, defendant encountered Mr. Van Vo and fired several shots at him. One of these shots killed Mr. Vo.
*1122 At trial, defendant testified that Mr. Vo tried to buy drugs from a member of the group. Defendant testified that after Mr. Vo was told that no one in the group was selling, Mr. Vo began to argue with one of the men, Charles Lorio. On cross-examination, defendant stated that it appeared that Mr. Lorio was attempting to rob Mr. Vo. Defendant testified that he attempted to stop this altercation by telling Mr. Lorio to leave Mr. Vo alone. Defendant further testified that at this point Mr. Vo got off his bicycle and came towards he and Mr. Lorio to attack them. Defendant testified that Mr. Vo then threw a rock at him which missed. According to defendant, he was moving away from Mr. Vo when he fired three shots at Mr. Vo.
The State re-called Charles Lorio after defendant testified, Mr. Lorio testified that he did not get into an altercation with Mr. Vo and that Mr. Vo never got off his bicycle. Mr. Lorio also testified that defendant told him that defendant did not mean to shoot Mr. Vo.
Defendant was indicted on December 17, 2009, on one count of second degree murder in violation of La. R.S. 14:30.1 and on one count of possession of a firearm by a felon in violation of La. R.S. 14:95.1. Defendant’s trial began on October 17, 2011 and on October 19, 2011, a jury found defendant guilty on both charges. On the charge of second degree murder, defendant was sentenced to life in prison without benefit of parole, probation, or suspension of sentence. On the charge of felon in possession of a firearm, defendant was sentenced to 15 years at hard labor. Both sentences were ordered to run concurrently-
L DISCUSSION

First Assignment

In his first assignment of error, defendant argues that the evidence at his trial was insufficient to convict him of second degree murder. He contends that the evidence shows he fired the weapon in self-defense to stop Mr. Vo from advancing in a pursuit he reasonably believed was an attack. Defendant further contends that he did not intend to kill or harm Mr. Vo, and that he only fired the weapon to scare Mr. Vo away. The State responds that the evidence was sufficient to support the conviction, noting that the undisputed evidence not only shows defendant was the aggressor, but that he had the specific intent to kill.
In reviewing the sufficiency of evidence, this Court must determine that the evidence, whether direct, circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
In cases such as this which involve circumstantial evidence, the trial court must instruct the jury that, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438. This Court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, this Court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Mitchell, 99-3342,5 p. 7 (La.10/17/00), 772 So.2d 78, 83; State v. Washington, 03-1135, p. 4 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 977.
Second degree murder is the killing of a human being when the killer: 1) has spe *1123 cific intent to kill or to inflict great bodily harm; or 2) is engaged in the perpetration or attempted perpetration of one of several enumerated felonies, even though he has no intent to kill or to inflict great bodily harm. La. R.S. 14:30.1; see State v. Lewis, 05-170, p. 8 (La.App. 5 Cir. 11/29/05), 917 So.2d 583, 589-90, writ denied, 06-0757 (La.12/15/06), 944 So.2d 1277. In this case, the jury was instructed as to both theories: specific intent murder and murder while committing or attempting: armed robbery; first degree robbery; second degree robbery; or simple robbery.
Under the first theory of second degree murder, the State had to prove that defendant had the specific intent to kill or to inflict great bodily harm. Specific intent is “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La. R.S. 14:10(1). The determination of specific intent is a question of fact. State v. Durand, 07-4, p. 8 (La.App. 5 Cir. 6/26/07), 963 So.2d 1028, 1034, writ denied, 07-1545 (La.1/25/08), 973 So.2d 753.
Applying the legal principles to the evidence in this case, this Court finds that the State carried its burden of proving that defendant acted with specific intent to kill or inflict great bodily harm. Defendant admitted that as he was running away from Mr. Vo, he pointed the gun in Mr. Vo’s direction and fired it three times. Specific intent to kill may be inferred from a defendant’s act of pointing a gun and firing at a person. State v. Hoffman, 98-3118, p. 48 (La.4/11/00), 768 So.2d 542, 585, cert. denied, 531 U.S. 946, 121 S.Ct. 345, 148 L.Ed.2d 277 (2000); State v. Batiste, 06-869, p. 6 (La.App. 5 Cir. 4/11/07), 958 So.2d 24, 27. Additionally, Dr. Garcia testified that Mr. Vo was shot in the back, and that the bullet went through the aorta, one of the main branches of the heart, and hit the pulmonary artery, another main trunk of the heart, causing Mr. Vo to bleed to death as a result of that wound. Specific intent to kill may be inferred from the extent and severity of the victim’s injuries. State v. Stacker, 02-768, p. 5 (La.App. 5 Cir. 12/30/02), 836 So.2d 601, 606, unit denied, 03-411 (La.10/10/03), 855 So.2d 327. In light of this, we find that a reasonable juror could have found that defendant had the specific intent to kill Mr. Vo.
Defendant also contends that he shot Mr. Vo in self-defense. At trial, defense counsel argued that defendant fired the weapon because Mr. Vo was coming at him, and he was trying to scare Mr. Vo away. The jury was instructed as to justifiable homicide and self-defense. When a defendant in a homicide prosecution claims self-defense, the burden is on the State to prove beyond a reasonable doubt that the defendant did not act in self-defense. State v. Brown, 414 So.2d 726, 728 (La.1982); State v. Theriot, 07-71, p. 13 (La.App. 5 Cir. 6/26/07), 963 So.2d 1012, 1020, writ denied, 07-1598 (La.2/1/08), 976 So.2d 715. The fact that an offender’s conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. La. R.S. 14:18.
The use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense. La. R.S. 14:19(A). A homicide is justifiable “[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.” La. R.S. 14:20(1). The 17aggressor or the person *1124 who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21.
La. R.S. 14:20(D) provides that no finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used deadly force had a reasonable belief that deadly force was reasonable and apparently necessary to prevent a violent or forcible felony involving life or great bodily harm or to prevent the unlawful entry. However, this Court has continued to recognize that while there is no unqualified duty to retreat from an altercation, the possibility of escape is a recognized factor in determining whether or not a defendant had a reasonable belief that deadly force was necessary to avoid the danger. State v. Terrell, 08-1189, p. 12 (La.App. 5 Cir. 2/25/09), 9 So.3d 245, 252, writ denied, 09-657 (La.12/18/09), 23 So.3d 931.
Here, this Court finds that the State carried its burden of proving that defendant did not act in self-defense and that the killing was not justifiable. The evidence reveals that defendant pointed a handgun at the unarmed victim and shot him in the back. Defendant fled the scene, ran into an apartment, and asked Mr. Thomas to hide the weapon in the vacuum cleaner. These theories are inconsistent with a theory of justifiable homicide. See State v. Patterson, 10-415, pp. 12-16 (La.App. 5 Cir. 1/11/11), 63 So.3d 140, 149-50, writ denied, 11-338 (La.6/17/11), 63 So.3d 1037, where this Court found that a defendant’s flight and attempt to avoid apprehension are circumstances from which a trier of fact may infer a guilty conscience. In Patterson, this Court also found that a gunshot wound to the back of the head indicated that the defendant became the aggressor and that his claim of self-defense was unsupported by the facts. Id.
^Although defendant claimed that Mr. Vo threw a rock at him and came toward him, defendant also testified that after the rock hit the wall, he did not know if Mr. Vo had anything else in his hands. Defendant stated that after Mr. Vo threw the rock, he turned and did not even look back at Mr. Vo. Defendant could not tell whether Mr. Vo had a gun or any other weapons. Defendant explained that he did not see anything in Mr. Vo’s hand, that he did not look at Mr. Vo to see whether he had something in his hand, and that he just started shooting. Defendant conceded at trial that if he had not had a weapon, he would have had no other choice but to keep running from Mr. Vo or maybe fight him, and that without the gun there were other ways this situation could have ended.
By returning the guilty verdict, the jury rejected defendant’s account of the events and found that defendant’s actions were neither reasonable nor necessary. It is the role of the fact-finder to weigh the credibility of the witnesses, and on review, this Court will not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State v. Wallace, 00-1745, p. 8 (La.App. 5 Cir. 5/16/01), 788 So.2d 578, 584, writ denied, 01-1849 (La.5/24/02), 816 So.2d 297.
For these reasons, this Court finds that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that defendant had the requisite intent to support his conviction for second degree murder, and that defendant did not act in self-defense. Therefore, the evidence presented at trial was sufficient to support defendant’s conviction.

*1125
Secmd Assignment

Defendant next argues that his sentence of life without parole for his second degree murder conviction is unconstitutionally excessive in violation of the U.S. | ¡Constitution’s Eighth Amendment. Defendant contends that a downward departure is warranted considering that Mr. Vo was chasing him and that he fired the weapon out of fear for his life. He claims that his actions do not comport with the verdict rendered, and he indicates that the sentencing ranges for manslaughter (not more than forty years) and negligent homicide (not more than five years) would be more appropriate. Defendant also contends that a downward departure is warranted considering his youth, lack of education, and his expressed remorse at having caused Mr. Vo’s death. Lastly, he asserts that the likelihood of rehabilitation on account of his youth is greater than that of recidivism. The State responds that the Louisiana Supreme Court has consistently rejected the assertion that a mandatory life sentence for a second degree murder conviction is excessive.
Defendant’s life sentence is mandatory under La. R.S. 14:30.1(B). It is presumed that a mandatory minimum sentence is constitutional. State v. Royal, 03-439, p. 11 (La.App. 5 Cir. 9/30/03), 857 So.2d 1167, 1174, writ denied, 03-3172 (La.3/19/04), 869 So.2d 849. Nevertheless, even though defendant received the mandatory minimum sentence, that sentence may still be reviewed for constitutional excessiveness. Id. To rebut the presumption of constitutionality, the defendant must show that: “[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances.” Id.
In Royal, the defendant was convicted of second degree murder and received the mandatory minimum sentence of life imprisonment. Id. At his sentencing hearing, the defendant failed to present any evidence or make any argument regarding a downward departure from the mandatory minimum sentence. As a |inresult, we found that the defendant failed to carry his burden and concluded that his sentence was not excessive. Id.
As in Royal, here, defendant failed to present any evidence or make any argument regarding a downward departure from the mandatory minimum sentence at his sentencing hearing. On appeal, he argues that a downward departure is warranted considering that Mr. Vo was chasing him and that he fired the weapon out of fear for his life, and that his actions did not comport with the verdict rendered. As discussed above however, the evidence is sufficient under the Jackson standard to show that defendant had the specific intent to kill or to inflict great bodily harm when he fired the gun in Mr. Vo’s direction, hitting unarmed Mr. Vo in the back.
Defendant also argues on appeal that the sentence is excessive based on his youthfulness. At the time he committed this crime, defendant was twenty-one years old. Although this is a young age and defendant is more likely to be susceptible to rehabilitation, .defendant was still an adult. The Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders. Miller v. Alabama, — U.S. —, 132 S.Ct. 2455, 2469, 183 L.Ed.2d 407 (2012). The Miller court did not prohibit life imprisonment without parole for juveniles, but instead required that a sentencing court consider an offender’s youth and attendant characteristics as mitigating circumstances before deciding whether to impose the harshest possible *1126 penalty for juveniles who have committed a homicide offense. Id.; State v. Simmons, 2011-1810 (La.10/12/12), 99 So.3d 28(Mem). Here however, defendant was above the age of eighteen and therefore his young age of twenty-one does not require that this Court find his mandatory sentence for second degree murder unconstitutional.
|nIn light of the foregoing, this Court finds that the facts of this case are insufficient to support a downward deviation from defendant’s mandatory sentence of life imprisonment and that the defendant’s sentence is not unconstitutionally excessive.

Third Assignment

In his third assignment, defendant argues that the trial court erred by failing to grant him a recess until he could call Terrell Thomas, a witness defendant argued was essential for his case. The decision to grant a recess lies within the discretion of the trial court and will not be overturned absent an abuse of that discretion. State v. Hampton, 98-331 (La.4/23/99), 750 So.2d 867, 877, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999); State v. Stevenson, 02-79, p. 3 (La.App. 5 Cir. 4/30/02), 817 So.2d 343, 345.
A motion for recess is evaluated by the same standards set in La.C.Cr.P. art. 709 for a motion for a continuance. State v. Warren, 437 So.2d 836, 838 (La.1983); State v. Rodriguez, 02-334, p. 14 (La.App. 5 Cir. 1/14/03), 839 So.2d 106, 117, writ denied, 03-482 (La.5/30/03), 845 So.2d 1061, cert. denied, 540 U.S. 972, 124 S.Ct. 444, 157 L.Ed.2d 321 (2003). In defense counsel’s motion for recess, he was obligated to state: first, facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial; second, facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and third, facts showing due diligence used in an effort to procure attendance of the witness. Id.
The record shows that Mr. Thomas was served with a subpoena to appear as a witness in this case. After Mr. Thomas missed court, an attachment was issued for him. At one point, the U.S. Marshals Service found Mr. Thomas in Texas. The 11 ¡.record indicates that before the lunch break on the trial’s second day, the State, defense counsel, and the trial court, were all under the impression that Mr. Thomas could be located in Houston, Texas and be made to come to the trial pursuant to the already issued attachment. After the lunch break however, defense counsel stated on the record that the State had given him a phone number for Mr. Thomas which turned out to be Mr. Thomas’ mother’s telephone number. Defense counsel stated that he called this number, and that Mr. Thomas’ mother told him that her son was still in Houston and gave him a phone number for Mr. Thomas. Defense counsel stated he then called this new number and spoke to Mr. Thomas. During this phone call, Mr. Thomas told defense counsel that he was in San Antonio, Texas and claimed not to know the airport’s location. Defense counsel told the trial judge that Mr. Thomas was being “totally obstructive.” Defense counsel then asked the trial court judge to call Mr. Thomas to determine what city he was in and to help get him into court. The trial court judge refused to call Mr. Thomas to question him without any verification that he would actually speak to Mr. Thomas and not another person.
The prosecutor told the court that Mr. Thomas’ mother had told him that morning that Mr. Thomas was in contact with the U.S. Marshals. Defense counsel responded that as of lunch time, Mr. Thomas *1127 stated that he was not in the custody of the U.S. Marshals. After this, defense counsel asked the court to call the U.S. Marshals Service, to try to locate Mr. Thomas. The trial court refused; however, it did allow for a five minute recess to allow a phone call to the U.S. Marshals Service to find out whether it knew Mr. Thomas’ location. After this five-minute recess, the prosecutor told the court that it had Officer DiGiovani call -the U.S. Marshal’s Service and that the State had put defense counsel and Officer DiGiovani in communication. Defense counsel stated, that Officer DiGiovani told | ^him that Mr. Thomas would come in if needed. Later however, another prosecutor stated for the record that [Officer] DiGiovani attempted to place calls to Mr. Thomas numerous times without answer.
Defense counsel then, at around 2:00 p.m., moved for a recess until 8:00 a.m. the next day to give him time to locate Mr. Thomas and bring him to court. The trial judge denied this motion. Defense counsel proceeded to argue for the recess, noting first that he had spoken to Mr. Thomas. Defense counsel next argued that he was told by law enforcement that Mr. Thomas had agreed to come back. Third, defense counsel argued that he was told by law enforcement that Mr. Thomas had agreed to come back because the warrant for his attachment had been recalled. Defense counsel concluded by arguing that since he was only given Mr. Thomas’ phone number at lunch, that he was moving as quickly as possible to get Mr. Thomas into court. Defense counsel then stated that he believed Mr. Thomas would corroborate defendant’s trial testimony and defendant’s last statement to the police.
The State responded by pointing out that nothing in Mr. Thomas’ previous statements indicated that Mr. Thomas would so testify. The trial judge then stated Mr. Thomas made three statements on August 19, 2009 and that he had read each of these statements. The trial judge found that in none of Mr. Thomas’ statement did he say that he saw the shooting.
Defense counsel then pointed out a portion of a statement by Mr. Thomas which reads,
[Question:] [a]nd all you all are standing outside when you all heard the shots?
[Answer:] Correct.
' [Question:] I’m sorry, you’ve got to say yes or no.
[Answer:] Yes. Yes. Yes.
[ 14Pefense counsel argued that this part of Mr. Thomas’ statement, and the fact that only two and a half hours remained for trial that' day, supported his motion to recess. The trial judge denied defense’s motion to recess. Defense counsel objected, and then moved for a mistrial. The motion for mistrial was denied.
Applying La.C.Cr.P. art. 709, this Court finds first that defense counsel failed to show any evidence that Mr. Thomas would testify to material facts which were needed for defendant’s defense. Each of Mr. Thomas’ statements to the police indicated that he did not see the shooting. Further, defense counsel admitted that he never received any information from Mr. Thomas, on the phone or otherwise, that should Mr. Thomas take the stand, he would testify to facts different from those in his previous statement. Defense counsel’s argument that he could get Mr. Thomas to suddenly change his story on the witness stand was baseless conjecture. This Court also finds that defense counsel failed to state facts and circumstances showing a probability that the witness would be available the next morning. When defense counsel moved to recess, defense counsel could not tell the court where Mr. Thomas was, nor of any plans to have Mr. Thomas attend trial the next day. Rather, defense counsel stated that *1128 Mr. Thomas was being “totally obstructive” on the phone and that Mr. Thomas was no longer answering his phone calls.
Even without these two findings however, defendant’s argument on this point is moot. After defendant testified on the second day of trial, trial was recessed for the day to allow the State time to call an expert witness to rebut defendant’s testimony. The practical effect of this was to give defense counsel the time he sought. In light of these findings, this Court holds that the trial court did not manifestly err by denying defendant’s motion to recess.
| fourth Assignment
Finally, defendant argues that the trial court erred by allowing the State to call an expert rebuttal witness regarding the location of the shell casings without allowing defendant to put on his own expert witness in surrebuttal.
During his direct examination, defendant admitted that he shot and killed Mr. Vo. Defense counsel then further questioned defendant regarding the fourth statement defendant gave to police. In that statement, which was played for the jury, defendant discussed his and the victim’s locations during the incident. Defendant said he and his friends were standing outside when the victim pulled up in the middle of the parkway on a bicycle. Defendant explained that he was standing right on the side of the building Mr. Lorio lived in when the incident occurred. Defendant stated that there was a car on the right side of him, that Mr. Lorio and the victim were behind the car in the middle of the parking lot talking, and that the car was parked in front of the building. After the tape was played, defendant testified on direct examination that he fired the weapon three times, that he did not see the victim get hit by a bullet, and that the last time he saw the victim, the victim was running towards the alleyway. On cross-examination, defendant testified that when the victim approached his group, defendant was standing behind the building and that by the time he fired at Mr. Vo, he was shooting from the “right side of the car.” On redirect examination, defendant said he knew the location from which the officer retrieved the shell casings. When defense counsel asked him whether those locations would be consistent with him shooting from “exactly where [the officers] told the District Attorney you were located,” defendant answered, “No, sir.” After defendant finished testifying, the trial recessed for .the day.
| mThe next morning, the State called Colonel Timothy Scanlan, an expert, to rebut defendant’s testimony about where he was when he fired his shots. Defense counsel objected to this witness. The trial court noted that during the State’s case-in-chief it had admitted into evidence, without objection, schematic drawings showing the location of the body, shell casings, and other evidence. The trial court found that defendant’s testimony put at issue the location of the casings, and because this was now at issue, the State had the right to call Colonel Timothy Scanlan as a rebuttal witness. The trial court reasoned that the State was under no duty to disclose rebuttal evidence before that time because the State could not have known what issues defendant would raise on his direct examination. It therefore rejected defense counsel’s objection and allowed Colonel Scanlan to testify.
Colonel Scanlan took measurements of the crime scene in the morning before testifying. He testified that the weapon used in this crime ejected shell casings from its right side. He also testified that, in his opinion, the places the shell casings were found were more consistent with a shooter “being near the center in between those two buildings than hugging a wall.” Colonel Scanlan’s material testimony was narrowly confined to the issue of the likely *1129 location of the shooter based on the locations of the shell casings.
La.C.Cr.P. art. 765 states the normal order of trial as follows:
(5) The presentation of the evidence of the state, and of the defendant, and of the state in rebuttal. The court in its discretion may permit the introduction of additional evidence prior to argument.
Although the article provides the prosecution a statutory right to rebut evidence introduced by the defense, the defendant does not have a right to rebut the State’s evidence. The introduction of additional evidence before argument is within the sound discretion of the trial court. State v. Silva, 96-459, p. 7 (La.App. 5 Cir. 11/26/96), 685 So.2d 1119, 1122, writ denied, 96-3067 (La.6/13/97), 695 So.2d 964.
Proper rebuttal evidence is that which is offered to explain, repel, counteract or disprove facts which are given in evidence by the adverse party. State v. Williams, 03-942, p. 10 (La.App. 5 Cir. 1/27/04), 866 So.2d 1003, 1010, writ denied, 04-450 (La.6/25/04), 876 So.2d 832. The trial court is vested with sound discretion in determining what constitutes valid and admissible rebuttal evidence. A trial court’s ruling on the admissibility of rebuttal evidence will not be disturbed, except in extreme cases, such as when the evidence was kept back deliberately for the purpose of deceiving and obtaining an undue advantage. Id.
Here, defendant, during his direct-examination, raised the issue of his location at the time of the shooting relative to the shell casings’ locations. This testimony was new evidence by the defendant which gave the State the right to put on rebuttal evidence. La. C.E. art. 611(E). Therefore, this Court finds that the trial judge did not err by allowing the State to call Colonel Scanlan to rebut defendant’s testimony. Further, given that defendant had no right to introduce surrebuttal evidence, this Court finds the trial court did not err by denying defendant the ability to put on his own expert in surrebuttal to Colonel Scanlan.

ERROR PATENT DISCUSSION

Pursuant to La.C.Cr.P. art. 920, this Court has conducted a review of this record for errors patent. We find that the trial judge did not advise defendant of the two-year prescriptive period for filing an application for post-conviction relief under La.C.Cr.P. art. 930.8. By way of this opinion, we now advise defendant that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La]C.Cr.P.18 arts. 914 or 922. See State v. Neely, 08-707, p. 9 (La.App. 5 Cir. 12/16/08), 3 So.3d 532, 538, writ denied, 09-248 (La.10/30/09), 21 So.3d 272.

CONCLUSION

For the reasons discussed above, we find defendant’s assignments of error without merit. We therefore affirm defendant’s convictions and sentences.

AFFIRMED