STATE OF LOUISIANA

VERSUS

BRETT H ELMER

NO. 24-KA-152

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 23-5774, DIVISION "E"
HONORABLE FRANK A. BRINDISI, JUDGE PRESIDING

December 18, 2024

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
John J. Molaison, Jr., and Scott U. Schlegel

**AFFIRMED**
    **SMC**
    **JJM**
    **SUS**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLANT,
BRETT H. ELMER
    Sherry A. Watters

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
    Honorable Paul D. Connick, Jr.
    Thomas J. Butler
    Monique D. Nolan
    Leo M. Aaron
    Molly Love

**CHEHARDY, C.J.**

Defendant, Brett H. Elmer, appeals his sentences for possession of cocaine and possession of heroin. For the reasons that follow, we affirm defendant's conviction and sentences.

FACTS AND PROCEDURAL HISTORY

On December 13, 2023, the Jefferson Parish District Attorney filed a bill of information charging defendant, Brett H. Elmer, with possession of cocaine weighing less than two grams, in violation of La. R.S. 40:967(C) (count one), and possession of methamphetamine weighing less than two grams, in violation of La. R.S. 40:967(C) (count two). At his December 14, 2023 arraignment, defendant pled not guilty.

On January 24, 2024, the State filed a superseding bill of information in which count one remained the same, but in count two, the State charged defendant with possession of heroin weighing less than two grams, in violation of La. R.S. 40:966(C). On February 22, 2024, defendant waived a reading of the bill and entered a plea of not guilty. With no objection from defendant, the case proceeded to trial on the same date.

At trial, Deputy James McAllister testified that he was a patrol deputy with the Jefferson Parish Sheriff's Office (JPSO). On November 23, 2023, he and Deputy Steven Carter were working the night shift patrol in Avondale, where there had been recent "car break-in burglaries." Deputy McAllister explained that at approximately 1:00 or 2:00 a.m., defendant, Brett Elmer, was observed wearing all black clothing and a black backpack. He stopped defendant, who told the officer his name, and the authorities checked for any outstanding warrants or attachments. Deputy McAllister then called Deputy Steven Carter for assistance. Deputy Carter and Deputy Daryl Julien arrived to assist. Defendant was not under arrest at this time, and Deputy McAllister testified that he asked defendant if he could search his

backpack. Defendant consented to the search. Deputy McAllister testified that the search was done for officer safety, and he conducted only a "quick glance" search of the backpack to see if there were any weapons. He did not see anything, and returned the backpack to defendant.

The search of defendant's name resulted in outstanding attachments for him. Deputy McAllister asked defendant if he could search his backpack again, and defendant consented. Deputy McAllister found a Styrofoam pouch that contained a dollar bill with a white powder substance on it, a white piece of paper that had a white powder substance on it, and a clear bag that had brown powder in it. He also found syringes, crack pipes, Narcan, a digital scale, counterfeit one hundred dollar bills, and multiple IDs in the backpack. None of the IDs found in defendant's backpack belonged to defendant, and he could not explain why he had them. Deputy McAllister photographed the evidence.

The drugs were field-tested by crime scene investigators. The white substance on the dollar bill tested positive for cocaine, and the other white substance tested positive for methamphetamine. The brown substance did not come back positive for anything. Deputy McAllister testified that because of the color, he assumed it was some type of heroin. All of the substances were tested again at the lab, and both white substances tested positive for cocaine. The brown substance tested positive for heroin and fentanyl. Deputy McAllister testified that defendant admitted that the cocaine in the dollar bill in the backpack and the Narcan were his, but he did not admit to anything else belonging to him.

Video footage from the deputy's body camera was played for the jury. As the footage played, Deputy McAllister explained that he and the other officers were asking defendant what he was doing in the area at that hour. He testified that defendant stated he had been picked up from New Orleans earlier that day and was in Avondale to meet his friend, who lived down the street on "Ursula." Deputy

McAllister testified that defendant's story did not add up. Defendant did not know the house number but stated the house was four houses down. Deputy McAllister testified that this house was known for drugs and known as a "trap house." When Deputy McAllister asked defendant if he got the drugs in the area, defendant did not respond.

Deputy Steven Carter testified that he was a patrol officer with JPSO. On November 23, 2023, at approximately 2:30 to 3:00 a.m., he responded as a backup officer to Deputy McAllister, who had stopped defendant. He testified that defendant matched a description of burglary suspects in that area. Deputy Carter's testimony regarding defendant's apprehension and the discovery of the narcotics largely corroborated Deputy McAllister's testimony. Deputy Carter read defendant his *Miranda*[1] rights from a physical card issued by the JPSO. Defendant acknowledged that he understood his rights and indicated that he wanted to talk. Deputy Carter testified that initially defendant admitted to the backpack and the items in it being his.

Deputy Carter testified that when defendant was asked about the narcotics found in his backpack, he admitted that the powder inside the dollar was his and knew that it was cocaine; he stated that he put it in his backpack and forgot about it.  He further stated that the other narcotics were not his but were for Steven Pertuit. Deputy Carter testified that Mr. Pertuit was an individual at the home on Ursula about whom the police had common knowledge.

Video footage from Deputy Carter's body camera was played for the jury. The footage showed him asking defendant questions as to why he was in the area at 2:50 a.m. Deputy Carter testified that after he read defendant his rights, defendant stated that a phone and the scale in his backpack belonged to his brother.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Deputy Carter testified that after defendant was placed in handcuffs, advised he was under arrest, and placed in the back of Deputy McAllister's vehicle, he told him that he had knowledge of the narcotics in his bag.

The State and defense counsel stipulated that if called to testify, Justin Mourain would qualify as an expert in the identification and analysis of controlled dangerous substances. The parties also stipulated that Mr. Mourain would testify in conformity with his January 24, 2024 report, which states: "JPSO Item 001A was found to contain cocaine, Item 001B was found to contain cocaine, and Item 001C was found to contain heroin and fentanyl with a gross weight of 1.18 grams plus or minus .04 grams."

At the conclusion of trial, a six-person jury returned a verdict of guilty as charged on both counts. On February 26, 2024, the trial court sentenced defendant to two years imprisonment at hard labor on each count, with credit for all time served. Immediately thereafter, the State filed a multiple offender bill of information on count one, alleging that defendant was a second-felony offender, given his 2014 conviction for violation of La. R.S. 14:62.8, home invasion. Defendant pled guilty to the multiple bill, thereby acknowledging the prior felony conviction, and completed a waiver of rights form indicating that he understood he would receive a sentence of two years imprisonment, concurrent with any other sentence.

After accepting defendant's stipulation to the multiple bill on count one, the trial court vacated defendant's original sentence on count one and again sentenced defendant to two years imprisonment with the Department of Corrections, "concurrent with any other sentence."

ANALYSIS

In a single assignment of error, defendant contends that his sentences on both counts were excessive, stating that the district court erred in imposing an

unconstitutionally excessive, maximum sentence on count two, and an excessive, mid-range sentence on count one as a multiple offender, which sentences were not commensurate with the small amount of drugs or the circumstances of the offender.

As to count one, defendant states that while the two-year enhanced sentence is mid-range, it is without parole. He argues that the cocaine was only powder residue on a folded paper and a dollar bill, and claims that he deserved a downward departure. As to count two, defendant claims that he received the maximum sentence, which is constitutionally excessive. He argues that the heroin was visible but was miniscule, and that the aggregate weight of 1.18 grams included the weight of the packaging and did not consider purity. Defendant argues that although the sentences are concurrent, they are excessive in these circumstances.

Defendant further argues that while it may seem frivolous to consider the excessiveness of concurrent two-year sentences, they must be examined in the context of the sentencing ranges, his circumstances, and his cooperation at his arrest. Defendant contends that maximum sentences are not favored, and those at or near the maximum ordinarily apply to the most blameworthy offenders. He argues that the trial court provided no basis for the sentences and cited no factors to justify them, or show that these were the worst violations, or that he was the most egregious of offenders. Defendant points out that he was only 34 years old at the time of his arrest and not beyond rehabilitation. Defendant contends the trial court's failure to consider mitigating factors, and failure to provide a factual basis for the maximum sentences, requires that the sentences be vacated and the case remanded for re-sentencing.

As to count one, the State responds that defendant is precluded from seeking review of his enhanced sentence because he agreed to the enhancement pursuant to a plea agreement, and he was made aware of the sentencing range. Regardless, the

State contends that he is not entitled to relief. The State further notes that defendant did not file a motion to reconsider sentence; his failure to do so limits him to a review for constitutional excessiveness only.

The State also contends that defendant did not receive maximum sentences for either of his convictions, and he received only a mid-range sentence for the habitual offender conviction on count one and the minimum sentence for count two. The State argues that drug crimes, even for small quantities, pose a danger to the welfare of the population. The State notes that defendant's criminal record shows he is a repeat offender and career criminal with a disregard for the law. The State avers that there is no merit to defendant's argument.

After the jury returned a guilty verdict, the trial court sentenced defendant to two years imprisonment at hard labor on each count. Defendant did not object to either sentence and did not file a motion to reconsider sentence. Furthermore, defendant completed a waiver of rights form acknowledging that he was a second-felony offender, that the sentencing range was six months to four years, and that he understood he would receive a sentence of two years imprisonment "concurrent with any other sentence."

The failure to file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a review of the sentence for constitutional excessiveness only. *State v. Harmon*, 19-570 (La. App. 5 Cir. 9/9/20), 301 So.3d 1278, 1288, *writ denied*, 20-1160 (La. 10/14/20), 303 So.3d 306. When the grounds for objection to the sentences, including alleged non-compliance with La. C.Cr.P. art. 894.1, are not specifically raised in the trial court, these issues are not included in the bare review for constitutional excessiveness, and the defendant is precluded from raising these issues on appeal. *State v. Clark*, 19-518 (La. App. 5 Cir. 6/24/20), 296 So.3d 1281, 1291, *writ denied*, 21-62 (La.

3/9/21), 312 So.3d 585. Here, defendant did not file a motion to reconsider sentence.

The Eighth Amendment to the U.S. Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense, or imposes needless and purposeless pain and suffering. *State v. Adams*, 23-427 (La. App. 5 Cir. 4/24/24), 386 So.3d 676, 683.

According to La. C.Cr.P. art. 881.4(D), the appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. In reviewing a sentence for excessiveness, the reviewing court shall consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice, while recognizing the trial court's wide discretion. *Adams*, 386 So.3d at 683. In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. *State v. Kelson*, 23-274 (La. App. 5 Cir. 12/27/23), 379 So.3d 779, 784-85. However, there is no requirement that specific matters be given any particular weight at sentencing. *Id.* at 785. A trial court should consider the defendant's personal history such as age, family ties, marital status, health, and employment record, as well as his prior criminal record, seriousness of the offense, and the likelihood of rehabilitation when determining an appropriate sentence. *Adams*, 386 So.3d at 686. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case and, therefore, is given broad discretion when imposing a sentence. *State v. Barnes*, 23-208 (La. App. 5 Cir. 12/27/23), 379 So.3d 196, 204, *writ denied*, 24-136 (La. 9/24/24), 392 So.3d 1141.

As to the enhanced sentence on count one, we find defendant is precluded from seeking review, because defendant agreed to the enhanced sentence. La. C.Cr.P. art. 881.2(A)(2) provides that a defendant "cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." *See also State v. Hunter*, 22-498 (La. App. 5 Cir. 4/26/23), 362 So.3d 993, 996. Because defendant received a sentence imposed in conformity with a plea agreement that was set forth in the record at the time of the plea, he is barred from challenging his enhanced sentence on count one as excessive.

As to count two, possession of heroin weighing less than two grams, La. R.S. 40:966(C)(4)(a) provides a range of two to four years imprisonment.[2] The trial court sentenced defendant to two years imprisonment at hard labor. Although the trial court alternatively could have sentenced defendant without hard labor, defendant's two-year sentence was the minimum term that defendant could have received for his conviction. Defendant's reference in his brief to the sentencing provision of La. R.S. 40:966(C)(1)(a) is in error, because the more specific provision dealing with heroin applies here.

This Court has determined that it is difficult to overstate the serious nature of any crime involving heroin, given the danger the substance poses to public health. *See State v. Williams*, 16-600 (La. App. 5 Cir. 6/29/17), 224 So.3d 1194, 1198, *writ*

---

[2] La. R.S. 40:966(C)(4)(a) states:

> (4) A substance classified in Schedule I **that is the narcotic drug heroin** or a mixture or substance containing a detectable amount of heroin or of its analogues, upon conviction for an amount:
>> (a) An aggregate weight of less than two grams, shall be sentenced to a term of imprisonment, with or without hard labor, for not less than two years nor more than four years.

(Emphasis added).

*denied*, 17-1332 (La. 4/27/18), 241 So.3d 306.[3] We disagree with defendant's contention that the small aggregate weight of the drugs found in his possession negates the seriousness of the offense, especially when considering the fact that defendant's backpack contained multiple IDs that did not belong to him, syringes, pipes, a digital scale, Narcan, and fake currency. The crime lab report also indicated that the bag contained both fentanyl and heroin.

As to the background and nature of defendant, the record reflects that defendant was 34 years old at the time of his arrest, and he pled guilty to home invasion in 2014. The officers found defendant walking in the street after 2:00 a.m. in an area with a recent string of car break-ins.

The third factor requires consideration of sentences imposed for similar crimes by this Court and other courts. As to count two, defendant references several cases in which the defendant was sentenced to the maximum sentence for various crimes to support his argument that he is not the worst type of offender deserving of a maximum sentence. However, as seen above, defendant received the minimum sentence, not the maximum sentence, on count two. *See* La. R.S. 40:966(C)(4)(a). A mandatory minimum sentence is presumed to be constitutional. *State v. Sly*, 23-60 (La. App. 5 Cir. 11/2/23), 376 So.3d 1047, 1092, *writ denied*, 23-1588 (La. 4/23/24), 383 So.3d 608.

Nevertheless, courts have the power to declare a sentence excessive under Louisiana Constitution Article 1, § 20, even if the sentence falls within statutory limits. To rebut the presumption of constitutionality, the defendant must clearly and convincingly show that he is "exceptional, which ... means that because of the unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender,

---

[3] In *Williams*, we acknowledged at the time that according to the Centers for Disease Control and Prevention: "Heroin-related overdose deaths [in the United States] have more than quadrupled since 2010."

the gravity of the offense and circumstances." *Id.* (citing *State v. Vedol*, 12-376 (La. App. 5 Cir. 3/13/13), 113 So.3d 1119, 1125, *writ denied*, 13-811 (La. 11/1/13), 125 So.3d 419). However, the trial court should exercise its authority to declare a mandatory minimum sentence excessive only under rare circumstances. *State v. Johnson*, 22-300 (La. App. 5 Cir. 8/9/23), 370 So.3d 140, 147. We find no such circumstances here. The trial court did not abuse its discretion when imposing the minimum two-year sentence on count two, and the sentence is not excessive.

ERRORS PATENT

We review the record for errors patent according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990).

*Enhanced Sentence on Count One - Statutory Restrictions*

La. R.S. 15:529.1(G) requires all multiple-offender sentences to be imposed without benefit of probation or suspension of sentence.[4] The transcript does not reflect that the trial court restricted probation or suspension of sentence when resentencing defendant on count one. Nevertheless, when a trial court does not mention the restriction of benefits, such conditions are deemed to exist by operation of law under La. R.S. 15:301.1. *See State v. Williams*, 00-1725 (La. 11/28/01), 800 So.2d 790. Accordingly, no corrective action is necessary.

*Enhanced Sentence on Count One – Indeterminacy*

After accepting defendant's stipulation to the multiple bill on count one, the trial court vacated defendant's original sentence as to count one and again sentenced defendant to two years imprisonment with the Department of

---

[4] When a defendant is sentenced as a multiple offender, it is the penalty provision for the underlying offense that imposes a parole restriction. *State v. Luckett*, 17-432 (La. App. 5 Cir. 12/27/17), 236 So.3d 1278, 1280. Here, La. R.S. 40:967 (C)(1) does not impose a parole restriction.

Corrections, "concurrent with any other sentence." The re-sentencing minute entry also indicates that the court ordered the sentences "on count 1 & 2 [to] run concurrent with one another and any or every sentence the offender is now serving."[5] Where there is a discrepancy between the transcript and the minute entry, the transcript prevails. *State v. Lynch*, 441 So.2d 732, 734 (La. 1983). Thus, the trial court's statement re-sentencing defendant on count one to two years imprisonment with the Department of Corrections, "concurrent with any other sentence," prevails.

La. C.Cr.P. art. 879 provides: "If a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence." This Court previously has indicated that where the trial court did not specify whether a sentence was ordered to run concurrently with specific sentences imposed, but instead ordered the sentence to run concurrently "with any other sentences," the sentence is indeterminate. *See State v. Nellon*, 18-385 (La. App. 5 Cir. 12/19/18), 262 So.3d 441, 445; *State v. Wiley*, 16-645 (La. App. 5 Cir. 4/12/17), 216 So.3d 393, 400.

Nevertheless, we decline to engage in error patent review on this issue. *See State v. Campbell*, 01-329 (La. 11/2/01), 799 So.2d 1136 (stating that an appellate court should refrain from employing error patent review to set aside a guilty plea about which the defendant makes no complaint, and which results in a disposition of the case favorable to the defendant (citing *State v. Guzman*, 99-1528 (La. 5/16/00), 769 So.2d 1158, 1162)).[6] Here, the defendant knowingly pled guilty as a

---

[5] Additionally, the multiple offender UCO provides: "This sentence shall be concurrent with any or every sentence the offender is now serving," and "Count 1 & 2 are to run concurrent with one another."

[6] In different circumstances, this Court would vacate an indeterminate sentence and remand to the trial court for resentencing, thereby pretermitting an analysis of defendant's assignments of error. *See, e.g.*, *State v. Dixon*, 17-422 (La. App. 5 Cir. 3/14/18), 241 So.3d 514, *writ denied*, 18-542 (La. 2/11/19), 263 So.3d 415. Given defendant's acquiescence to the enhanced sentence on count one, his failure to raise the issue on appeal, and the Supreme Court's directions in *Campbell*, we have determined that addressing the merits of defendant's appeal on both count

multiple offender on count one, acknowledging that he would be resentenced to two years imprisonment, to run concurrently "with any other sentences." Neither defendant nor the State raised the indeterminate-sentence issue on appeal.

*Original Sentence on Count Two - Concurrent Nature*

Although the original sentencing minute entry states that the (initial) sentence on count one and the sentence on count two were to "run concurrent with one another and any or every sentence the offender is now serving," the transcript does not indicate that the sentences were ordered to run concurrently, and the transcript prevails. *See Lynch*, 441 So.2d at 734. Thus, no corrective action is necessary as to the sentence for count two.

## DECREE

Finding no merit to the arguments on appeal, defendant's conviction and sentences are affirmed.

**AFFIRMED**

---

one and count two is prudent, rather than remanding for resentencing on count one. Furthermore, defendant has an adequate remedy should he choose to pursue post-conviction relief.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 18, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 24-KA-152

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE FRANK A. BRINDISI (DISTRICT JUDGE)
SHERRY A. WATTERS (APPELLANT)      JULIET L. CLARK (APPELLEE)      MONIQUE D. NOLAN (APPELLEE)
THOMAS J. BUTLER (APPELLEE)

**MAILED**
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
LEO M. AARON (APPELLEE)
DISTRICT ATTORNEY
MOLLY LOVE (APPELLEE)
ASSISTANT DISTRICT ATTORNEYS
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053